Good morning, your honors. May it please the court, Holly Sullivan on behalf of Mr. Zaccagnini, the appellant. Mr. Zaccagnini was stopped preemptively by a spike strip as he was driving 65 miles per hour on Interstate 8. Agents threw a spike strip in front of the Suburban that he was driving on a mere suspicion that the vehicle that he was in, the Suburban, had entered the United States illegally or might be smuggling something. Well, it was slightly more than just a mere suspicion, wasn't it? I mean, they eliminated, they spotted the vehicle driving on the desert in the sand. There were only three ways to get to that spot, two of which they eliminated and the third being Mexico, and that was feasible because there was no fence at that point. So they knew that, right? The agents didn't know where the Suburban had come from. At the first point that the agents see the Suburban, it is driving, you're correct, it's driving in the sand dunes area on the sand. No agents, and that area is very, extremely well manned. There are agents with cameras watching along the border. There are agents laying in the sand along the border. There are agents in unmarked vehicles, the entire stat unit, national guardsmen, and park rangers are all within that same area. Not one agent saw that vehicle, saw that Suburban cross the border. The agents did testify that no one saw that vehicle also enter those areas through the Grayswell exit, through Gordon's Well exit, through any of the exits off of the Interstate 8. No agents saw that. So the first time that agents see the Suburban, it is driving near the campground, the Midway campground, in the sand area. So agents did not know where the vehicle came from, but had a suspicion that the vehicle had entered from Mexico. Just that alone, a suspicion that the Suburban had entered from Mexico is not enough to stop, and specifically not enough in the manner that the agents chose to stop the Suburban. The agents did not turn on their lights and briefly detain the Suburban to ask questions or to inquire further. Instead, the agents seriously curtailed Mr. Zaccanini's freedom of movement by allowing the Suburban to legally and lawfully leave the campground area, enter Interstate 8, and drive for over 15 miles on Interstate 8 before agents threw a spike strip which flattened the tires, two tires, of the Suburban that Mr. Zaccanini was driving. Although at that point he may be free to leave if agents search the Suburban and find nothing, his ability to leave has been taken away by the agents. He would now be in a Suburban on the interstate with two flat tires and unable to leave. That type of curtailment of his freedom of movement requires probable cause, and the agents did not have probable cause at that point to use a spike strip. Counsel, you've called our attention to three cases that were argued in April that appear to raise a similar issue to yours, calling for the court to decide what level of suspicion or cause is needed to place a spike strip. Would it be your position that we should defer submission and just wait for those cases? I do think that is preferable and that it is nearly the same fact pattern that arises in all of these cases. Each case has a little bit different of a fact pattern, but all of the cases entail what level of suspicion is required for agents to utilize a spike strip. When there is not a case of a chase where a person has fleed and there is some type of possible driving, the manner in which the person is driving, some other type of factor that would require the agents to utilize a spike strip to stop a car that may be putting others in danger. So none of those cases are present before the court. Would the outcome in your case be different if the standard is only reasonable suspicion and not probable cause? Because it's true they couldn't prove beyond a reasonable doubt where the vehicle had originated, so there may not be probable cause, but there was reasonable suspicion. So does that distinction matter here? I do think it does matter. It's a closer call if the court is looking to reasonable suspicion rather than probable cause in order to utilize the spike strip. But still, I don't believe that there is reasonable suspicion on the facts here. The only facts that the agents have to rely on is a mere suspicion that that suburban had entered from Mexico into the United States. That alone, that offense, illegal entry of a vehicle or illegal entry of a person, an alien, first of all, it has to be an alien under 8 U.S.C. 1325, and there's no indication that Mr. Zaconini or the vehicle that he was driving had any indication that there was an alien in that vehicle. There were California license plates. The car was registered to El Centro, California, and there was nothing to say that it was not a United States citizen, which Mr. Zaconini was, driving in a car, than had inadvertently gone through the area where there's not a set fence into Mexico. There has to be a voluntary illegal entry, and there's no indication that that was the case. I'm kind of puzzled by the way you've posed the question, and thus the analysis, because it would seem to me, logically, that the level of suspicion that is required has to do with the stop, whereas the use of the spike strip has to do with whether the force used to effect the stop is excessive. And I wouldn't understand there to be a level of suspicion required for that so much as you need to balance whether the government's intrusion, the government's interest is sufficient to outweigh the intrusion into personal security. I agree that there is a balancing test, but there's a level of suspicion that's required, and our argument is that it is probable cause to arrest Mr. Zaconini. Yeah, but the time the arrest was accomplished, the officers had smelled the marijuana, and he said, okay, he threw in the towel. Our position is that at the time that the spike strip is used to puncture the tires of the suburban and the suburban comes to a stop, that at that point, Mr. Zaconini is arrested. A reasonable person in that same circumstance would not feel free to leave. A reasonable person, if they were free to leave, they have no manner in which to leave. If you liken it to the- Well, of course he had the choice to stop, and he chose not to. So as far as I'm aware, there's absolutely no authority that a use of a spike strip, which is for safety, I mean it's far better than shooting a tire out or boxing him in and having a high-speed chase on an interstate highway constitutes an arrest. The government's arguing that there was flight in this case, but there was no flight. It's 30 seconds from the time that agents turn on the lights on the grill of the unmarked car and the sirens until agents utilized a spike strip to stop the car. The spike strip wasn't put down in response to agents saying that Mr. Zaconini was fleeing. No agent testified that Mr. Zaconini fled or was attempting to escape. There was an unmarked car that turned on the lights of the grill and then the sirens, but agents already had moved two miles up ahead in order to prepare for the spike strip. So it wasn't based on flight that the agents utilized the spike strip. The agents utilized the spike strip because they were going to utilize the spike strip. They had already set the spike strip up prior to the lights and siren. Your Honor, if I may reserve my last minute. Okay, sure. Thank you. Sure. May it please the Court, Ms. Kessler on behalf of the United States. Your Honor, these agents knew this vehicle had come across the border illegally. They didn't actually see the vehicle come across the border, but they knew. That's what the agent testified to. Judge Moskowitz made a specific factual finding. That was the only reasonable conclusion. An analogy I thought of as I was sitting here today, as I was watching the court, there's two doors there where people come to the courtroom. There's one in the back. If I start this argument and there's nobody sitting there, I turn around two minutes later and the room is full like this, I know they came through that back door. I didn't see them do it, but I know they did it. Certainty is nice for probable cause analysis, but it's certainly not required. Probable cause is just a reasonable person to believe criminal activity may be afoot. It's less than preponderance of the evidence. But in this case, we had the next best thing to actually seeing him cross the border, as Judge Moskowitz clearly found. And this case in Hernandez-Garcia mandates that Judge Moskowitz be affirmed that he was not a criminal offender. The facts were the agent knew of a vehicle that crossed the border in the desert. This court held that provided a probable cause to believe there was smuggling and it justified the use of the spike strip. Now, I would like to correct Ms. Sullivan on one part. The agent clearly testified, Agent Mills, who was a supervising agent, testified he was not going to automatically deploy the spike strip. I was going to give Agent Vega Torres an opportunity to stop him. That's why I told him to light him up. He did not yield. That's why they used the spike strip. Now, Ms. Sullivan says 30 seconds is not very long. Well, I did a little experiment driving to the courtroom today. If you look at your watch and then you count out 30 seconds and you have a siren that was testified as being so loud it's painful, a flashing red light, I mean a solid red light, a flashing blue light and flashing headlights, 30 seconds is a long time. You should at least give some kind of indication you're going to pull over. The reason they use spike strips is in this part of the country, in the desert area, it's famous for high-speed chases. These people, this is not a case where a guy has any kind of defense. When they come smuggling across the desert, they have drugs stacked floor to ceiling or they have people stacked floor to ceiling. They don't have a guy on defense saying, hey, it was hidden somewhere in the car. I didn't know about it. So these people often grab it. They take off at high speed. They drive on the wrong side of the freeway. They cause many accidents. The spike strip is a safety device, as the agents testified. The spike strip does not cause an explosion, does not cause a blowout. There was no swerving of the car in this case. The spike strip was designed to gradually deflate the tire. This individual went over the spike strip, drove off another half mile, gradually slowing down and pulls to the side of the road. Now, Judge Ramirez, you're absolutely correct when you say the analysis is not what would a reasonable person believe when he was stopped to determine whether or not excessive force was used. The reasonable person, whether or not a reasonable person would believe they were in custody is the test to use in the Fifth Amendment context whether or not Miranda is required. When judging whether or not excessive force was used, the question is did the officers act reasonably? Was it the government's interest versus the privacy rights, and did the government officers act reasonably? And there's two things I'd like to say about that. In the Beck case, the court clearly said you can't turn a reasonable suspicion stop into a probable cause arrest based on the actions of the defendant. In other words, if a defendant fails to yield and the officers have to use more force to apprehend them than they would have in a final suspicion situation, that doesn't turn it into arrest. We have cases in this circuit where people are ordered out of cars, at gunpoint, handcuffed, and put in the back of cars. That's still a final suspicion stop because of officer safety reasons or actions of the defendant failing to yield to the officer's request. And we saw at the U.S. v. Smith case in our brief that also ---- I should ask a question with respect to the Charlie case that was decided in 2005 in the Ninth Circuit, which indicated that the inquiry here should focus on the perspective of the person seen rather than the subjective beliefs of the officers involved. I'm sorry. What case was that, Your Honor? Which case was that? United States v. Charlie. I'm not familiar with the facts of that case. I don't know if that was a Fourth Amendment excessive force case or if that was a custody for Miranda case. In my experience, usually that analysis is ---- Well, Quoting from it, it's been an arrest if a reasonably innocent person in the same circumstances would not have felt free to leave after brief questioning. And it seems to me that ---- I'm not ---- Here, let's see, right over the ---- I'm sorry, Your Honor, I'm not familiar with that case. Huh? I'm not familiar with that case. I'm sorry. It's a 2005 case from the Ninth Circuit. Okay. What was the name of that case, Your Honor? United States v. Charlie. I'm fairly confident that the black letter law is, and there could be exceptions always, the black letter law is when judging the force used to make an arrest, the analysis is balance the government's interest versus a privacy right. And the question is, did the officers act reasonably? That's the analysis. Counsel, is there any reason why we shouldn't wait for the earlier panel, since our internal rules have kind of a first-in-time, first-in-right view of the decision of issues? In your view, are the cases cited by opposing counsel sufficiently similar that we should wait for that? I don't believe, Your Honor, you need to wait. Those cases are out of our district. They do have similar issues about use of the spike strip, when is that excessively forced, and do you need probable cause? But this case ---- but all those decisions are going to be factual. All Fourth Amendment analysis is a factual analysis, and the facts in this case are extremely strong. As I said before, we have beyond probable cause. We have almost certainty that he is engaged in smuggling activity. And then the whip cream on top of that is we light him up, and for 30 seconds he doesn't yield. That adds to the probable cause. I mean, this is so strong. We didn't make this argument. These facts are so strong, this could almost be an extended border search. We didn't make that argument. I'm not making it here. I'm just saying that these facts are so strong. This car was seen one-quarter mile north of the border, driving through the sands. The only way he could have got there was Gordon's Well or Gray's Well. They eliminated those two legal possibilities. They've been in surveillance all day. They had checked the campgrounds. The place was deserted. All the agents said the only way he could have got where he was was coming across the border illegally. That was confirmed when he failed to yield, that he was involved in some kind of smuggling activity. And I refer again to Hernandez-Garcia, which I think completely controls this case. Absence of any further questions, Your Honor, I submit. Okay. Thank you. I think that's it. Ms. Sullivan. Thank you, Your Honor. The only point I'd like to note is the factors in Mr. Zaconini's case are far different than the factors cited by the government in other cases that find flight. There was no evidence here, as in Hernandez-Garcia and Santa Maria, that Mr. Zaconini turned and fled towards Mexico, that he sped up, that there was any type of reckless driving that occurred. When he left that area, the campground area, he stopped at a stop sign, proceeded lawfully onto the freeway, was not speeding, the car didn't appear to be weighted down. There were no other factors that are present in other cases. There is no sign of flight compared to the other cases. He did not turn, he did not drive over the median, he did not weave between cars. He was driving 65 miles an hour. At the time that the agents put on the lights and the siren, there was an unmarked car that was driving on an interstate with other cars that was following him for 15 miles. Thirty seconds is not an incredible amount of time to react to determining that a car that's behind you that's unmarked has turned on the sirens and turned on the lights that is there for you. Thank you. Thank you, counsel, both of you. The matter I just argued will be submitted. And we'll next hear argument in Watson v. Schwartzenegger. Thank you. Mr. Jacobson.
judges: Rymer, Graber, Aldrich